21-80-cv
10012 Holdings, Inc. v. Sentinel Ins. Co.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: September 2, 2021        Decided: December 27, 2021)

Docket No. 21-80-cv

_____

10012 HOLDINGS, INC. DBA GUY HEPNER,

*Plaintiff-Appellant*,

v.

SENTINEL INSURANCE COMPANY, LTD.,

*Defendant-Appellee*.*

_____

Before:

WALKER, CALABRESI, and LOHIER, *Circuit Judges*.

10012 Holdings, Inc. d/b/a Guy Hepner, which owns and operates a fine arts gallery and dealership in New York City, sought coverage under three provisions of an insurance policy issued by Sentinel Insurance Company, Ltd. for losses and extra expenses incurred when it suspended its operations in accordance with government restrictions on non-essential businesses during the COVID-19 pandemic. When Sentinel denied coverage, 10012 Holdings filed suit asserting claims for breach of contract and declaratory judgment. The United States District Court for the Southern District of New York (Schofield, J.) dismissed the claims with prejudice, and 10012 Holdings appealed. Under New York law, the policy provisions that 10012 Holdings invokes provide coverage only where the insured suspends

---

* The Clerk of Court is directed to amend the caption as set forth above.

its operations because its property or property in its immediate area suffered physical damage.  Because 10012 Holdings does not plausibly allege such physical damage, we **AFFIRM.**

JOHN V. GOLASZEWSKI, The Casas Law Firm, P.C., New York, NY, *for Plaintiff-Appellant* 10012 Holdings, Inc. d/b/a Guy Hepner.

JONATHAN M. FREIMAN (Shai Silverman, *on the brief*), Wiggin and Dana LLP, New Haven, CT, *for Defendant-Appellee* Sentinel Insurance Company, Ltd.

Jeremy M. Creelan, Michael W. Ross, Jenner & Block LLP, New York, NY; John H. Mathias, Jr., David M. Kroeger, Gabriel K. Gillett, Jenner & Block LLP, Chicago, IL, *for Amici Curiae* Restaurant Law Center, New York State Restaurant Association, and New York City Hospitality Alliance, *in support of Plaintiff-Appellant and reversal.*

Joshua L. Mallin, Dennis D'Antonio, Weg & Myers, P.C., New York, NY, *for Amicus Curiae* Mario Badescu Skin Care, Inc., *in support of Plaintiff-Appellant and reversal*.

Wystan M. Ackerman, Robinson & Cole LLP, Hartford, CT; Laura A. Foggan, Crowell & Moring LLP, Washington, DC; James R. Martin, Zelle LLP, Washington, DC, *for Amici Curiae* American Property Casualty Insurance Association and National Association of Mutual Insurance Companies, *in support of Defendant-Appellee and affirmance.*

LOHIER, Circuit Judge:

In a scenario that has become all too familiar during the COVID-19 pandemic, 10012 Holdings, Inc. d/b/a Guy Hepner, which operates as a brick-and-mortar art gallery and dealership in New York City, was forced to

suspend its operations to comply with government restrictions on non-essential businesses. As a result, 10012 Holdings could no longer sell paintings at its gallery and resorted to online sales, with employees allowed to access the gallery for routine business purposes such as packing and shipping a painting purchased online. The company, which was insured under a widely used business property insurance policy (the "Policy") issued by Sentinel Insurance Company, Ltd., sought coverage under the Policy for its business income losses and expenses relating to the gallery's closure. Sentinel denied coverage on the ground that 10012 Holdings did not suffer direct physical loss of or physical damage to its property or property within its vicinity, as the Policy required. Invoking three provisions of the Policy, 10012 Holdings brought this action for breach of contract and a declaratory judgment that Sentinel was liable for coverage of its COVID-19-related business losses, claiming that the Policy's references to "physical damage" or "physical loss" include the loss of use of property as a result of the suspension of business operations. The United States District Court for the Southern District of New York (Schofield, J.), applying New York law, agreed

3

with Sentinel's reason for denying coverage and dismissed 10012 Holdings's claims with prejudice under Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

The following facts are drawn from 10012 Holdings's complaint and documents attached thereto, and are assumed to be true for purposes of our de novo review of the District Court's judgment dismissing the complaint for failure to state a claim upon which relief can be granted.  See Schlosser v. Kwak, 16 F.4th 1078, 1080 (2d Cir. 2021).

In 2019, 10012 Holdings purchased the Policy from Sentinel to cover the period from April 1, 2019 through April 1, 2020.  The Policy provides three principal types of coverage relevant to this appeal:  "Business Income," "Extra Expense," and "Civil Authority."  The Business Income provision requires Sentinel to cover certain business losses incurred if 10012 Holdings suspended its operations due to "direct physical loss of or physical damage to" its property "caused by or resulting from a Covered Cause of Loss."  Joint App'x 83.  The Policy defines "Covered Cause of Loss" as "risks of direct physical loss" not otherwise excluded by the Policy.  Joint App'x 75.  The

4

Extra Expense provision, meanwhile, reimburses "reasonable and necessary Extra Expense" incurred during a "period of restoration" of the premises following "direct physical loss or physical damage to" 10012 Holdings's property "caused by or resulting from a Covered Cause of Loss." Joint App'x 83. Finally, the Civil Authority provision extends coverage for business income losses if access to 10012 Holdings's premises "is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of" 10012 Holdings's premises. Joint App'x 84.

Starting in March 2020, 10012 Holdings was forced to suspend business operations at the art gallery in compliance with the now well-known executive orders issued by the Governor of New York as the immediate response to the COVID-19 pandemic. Relying on the Business Income, Extra Expense, and Civil Authority provisions, 10012 Holdings demanded that Sentinel reimburse it for the losses and expenses it incurred as a result of suspending its operations. In a letter dated April 3, 2020, Sentinel disclaimed coverage, asserting that "COVID-19 did not cause property damage at [10012 Holdings's] place of business or in the immediate area." Joint App'x 15.

5

When 10012 Holdings filed this action for breach of contract and declaratory relief, Sentinel moved to dismiss the complaint. In a brief opinion, the District Court granted Sentinel's motion and dismissed 10012 Holdings's claims with prejudice. 10012 Holdings, Inc. v. Sentinel Ins. Co., 507 F. Supp. 3d 482 (S.D.N.Y. 2020). The District Court first concluded that 10012 Holdings could not recover under either the Business Income provision or the Extra Expense provision because, under New York law, the provisions are unambiguously "limited to losses involving physical damage to the insured's property," which 10012 Holdings did not allege it suffered. Id. at 486–88. The Civil Authority provision was also inapplicable, the District Court explained, because it provided coverage only if the closure of 10012 Holdings's business resulted directly from the closure of neighboring properties. Id. at 488. The District Court pointed out that 10012 Holdings was forced to close the gallery for the same reason that its neighbors were required to shutter their businesses, namely, the risk of harm to individuals on its own premises due to the pandemic. Id. at 488–89. Finally, the District Court denied 10012 Holdings leave to amend for the simple reason that "the Policy does not provide coverage for the loss Plaintiff suffered." Id. at 489.

6

This appeal followed.

**DISCUSSION**

The central question we address is whether the Policy provides coverage for 10012 Holdings's financial losses even though 10012 Holdings does not allege that its closure resulted from physical damage to its property or the adjoining property of its neighbors. To answer that question, we apply New York law, which the parties agree governs our interpretation of the Policy.

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (quotation marks omitted). "The policy must . . . be construed in favor of the insured, and ambiguities, if any, are to be resolved in the insured's favor and against the insurer." U.S. Fid. & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 232 (1986). But "[w]here the provisions of [a] policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." Id. (quotation marks omitted).

## I. The Business Income and Extra Expense Provisions

10012 Holdings argues that it is entitled to coverage under the Business Income and Extra Expense provisions because the Policy's use of the term "direct physical loss," which appears in both provisions and which the Policy does not define, plainly includes circumstances where 10012 Holdings is merely deprived of access to its business property. But New York law compels us to reject 10012 Holdings's proposed reading of the term.

In particular, we note that in Roundabout Theatre Co. v. Cont'l Cas. Co., 751 N.Y.S.2d 4 (1st Dep't 2002), the First Department rejected a similar reading of the term "loss of . . . property." Id. at 8. There, a municipal order closed a street for safety reasons following a construction accident at a building in the area. Id. at 5. The plaintiff, a theater company, was forced to cancel several scheduled performances when its theater was rendered inaccessible to the public for several weeks due to the street's closure. Id. Although the theater itself suffered no physical damage, it sought coverage for its monetary losses under its insurance policy's business interruption provision. Id. at 5–6. The trial court in Roundabout Theatre ruled in favor of the theater and concluded that the phrase "loss of" as used in the policy's

8

business interruption provision included the theater's "loss of use" of its premises. Id. at 6. Describing the trial court's interpretation as "flawed," id. at 8, the Appellate Division reversed. The policy's business interruption provision, the court noted, covered loss of property "caused by the perils insured against," which the policy defined as "all risks of direct physical loss or damage to the [insured's] property, not otherwise excluded." Id. (quotation marks omitted). Given the plain meaning of the words "direct" and "physical" and the structure of the policy overall, the Appellate Division held that the provision "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage." Id.

We follow this holding. The relevant provisions at issue in Roundabout Theatre and the provisions at issue in the Policy before us are not materially different. In construing New York law, we are "bound . . . by the law of New York as interpreted by the New York Court of Appeals," and we "consider the language of [state intermediate appellate] courts to be helpful indicators of how the state's highest court would rule." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 739 F.3d 45, 48 (2d Cir. 2013) (quotation marks omitted). We are unaware of any contrary authority in

9

New York that diverges from the holding in <u>Roundabout Theatre</u>, which state and federal courts in New York have (at either the motion to dismiss stage or on summary judgment) uniformly applied since the start of the COVID-19 pandemic to deny coverage under similar insurance provisions where the insured property itself was not alleged or shown to have suffered direct physical loss or physical damage.  <u>See, e.g.</u>, <u>Benny's Famous Pizza Plus Inc. v. Sec. Nat'l Ins. Co.</u>, 72 Misc. 3d 1209(A), slip op. at *4 (N.Y. Sup. Ct., Kings Cnty. July 1, 2021); <u>6593 Weighlock Drive, LLC v. Springhill SMC Corp.</u>, 147 N.Y.S.3d 386, 392–93 (N.Y. Sup. Ct., Onondaga Cnty. 2021); <u>Mangia Rest. Corp. v. Utica First Ins. Co.</u>, 148 N.Y.S.3d 606, 611-12 (N.Y. Sup. Ct., Queens Cnty. 2021); <u>Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.</u>, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct., Orange Cnty. 2021); <u>see also</u>, <u>e.g.</u>, <u>Kim-Chee LLC v. Phila. Indemnity Ins. Co.</u>, No. 1:20 Civ. 1136, 2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021); <u>Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.</u>, 534 F. Supp. 3d 216 (N.D.N.Y. 2021); <u>Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.</u>, No. 20 Civ. 2777 (KAM)(VMS), 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021); <u>Sharde Harvey DDS, PLLC v. Sentinel Ins. Co.</u>, No. 20 Civ.

10

3350 (PGG) (RWL), 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021).[1]  As one New York State trial judge recently explained, courts in jurisdictions outside New York may have reached a different conclusion,[2] but "all New York courts applying New York law . . . have soundly rejected the argument that business closures . . . due to New York State Executive Orders constitute physical loss or damage to property."  Benny's Famous Pizza Plus Inc., slip op. at *4.

Urging a contrary conclusion, 10012 Holdings and the amici point to Pepsico v. Winterthur Int'l Am. Ins. Co., 806 N.Y.S.2d 709 (2d Dep't 2005), Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226 (3d Cir. 2002), and TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. 2010), aff'd, 504

---

[1] To the extent that 10012 Holdings cites lower court decisions from other states and their interpretations under non-New York law, those cases are not binding on New York courts and do not prevent us from confidently predicting how the Court of Appeals would decide the issue before us.

[2] That is not true, however, for six sister circuits applying Oklahoma, Illinois, California, Ohio, Georgia, and Iowa law, and holding that similar business interruption provisions require some physical damage to the insured's property. See Goodwill Indus. Cent. Okla., Inc. v. Phila. Indem. Ins. Co., — F.4th —, 2021 WL 6048858 (10th Cir. Dec. 21, 2021) (Oklahoma); Sandy Point Dental, P.C. v. Cincinnati Ins. Co., — F.4th —, 2021 WL 5833525 (7th Cir. Dec. 9, 2021) (Illinois); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885 (9th Cir. 2021) (California); Santo's Italian Café v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021) (Ohio); Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co., No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (Georgia); Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141 (8th Cir. 2021) (Iowa).

11

F. App'x 251 (4th Cir. 2013), none of which are to the contrary. In Pepsico, for example, a soda company was forced to destroy its soft-drink product when the company "used faulty raw ingredients" provided by third-party vendors, which rendered the soda "unmerchantable." Pepsico v. Winterthur Int'l Am. Ins. Co., 788 N.Y.S.2d 142, 143 (2d Dep't 2004). One question was whether the destruction of the soda product fell within the insurance coverage for "all risks of physical loss of or damage to property," including "personal property" such as the soda. Pepsico v. Winterthur Int'l Am. Ins. Co., 6 Misc. 3d 1006(A), slip op. at *1 (N.Y. Sup. Ct., Westchester Cnty. Dec. 10, 2004). The Second Department concluded that the loss of the product was covered because a "physical event" occurred that "seriously impaired" the "function" of the soda and caused the injury or damage. 806 N.Y.S.2d at 711. In other words, the product had sustained physical damage. Similarly, the courts in Affiliated FM Ins. Co. and Ward determined that particulates like asbestos, odors, and noxious fumes, which physically damaged the insured's premises, could trigger coverage under certain policies. Affiliated FM Ins. Co., 311 F.3d at 236; Ward, 715 F. Supp. 2d at 708. Of course, the requirement of a physical event that causes damage to the premises is completely consistent with

12

Roundabout Theatre, but 10012 Holdings does not here allege a "physical event" that caused injury or damage to its premises.

Under the circumstances, "we find [no] persuasive evidence that the highest state court would reach a different conclusion" from Roundabout Theatre. Entron, Inc. v. Affiliated FM Ins. Co., 749 F.2d 127, 132 (2d Cir. 1984). We therefore hold, in accord with Roundabout Theatre and every New York state court to have decided the issue, that under New York law the terms "direct physical loss" and "physical damage" in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property. We therefore reject 10012 Holdings's argument that "physical loss" must mean "loss of physical possession and/or direct physical deprivation" — in other words, loss of use.

We note, too, that the term "loss of use" is missing from the Business Income and Extra Expense provisions but included in other provisions of the Policy. A provision entitled "Pollutants and Contaminants," for example, explicitly distinguishes "physical loss [or] physical damage" on the one hand

13

and "loss of use of property" on the other, Joint App'x 98, treating "physical loss" and "loss of use of property" as distinct harms.

10012 Holdings points to provisions in another section of the Policy entitled "Business Liability Coverage Form," which define "property damage" to encompass both "[p]hysical injury to tangible property" and "[l]oss of use of tangible property that is not physically injured." Joint App'x 123. As Sentinel observes, however, the Business Liability Coverage Form details coverage for claims that are asserted against the insured by a third party, while the section of the Policy at issue in this appeal, contained in a Special Property Coverage Form, details coverage for losses the insured itself suffers. These two sections are entirely separate and protect "wholly different interests." Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co., 92 N.Y.2d 682, 688 (1999). Worse still for 10012 Holdings, the term "property damage" is not used at all in the coverage provisions that 10012 Holdings invokes. We have said that distinct terms must be given their own effect, and that the use of a term in one place but not the other is presumed to be intentional. See India.com, Inc. v. Dalal, 412 F.3d 315, 323 (2d Cir. 2005) (applying New York law). Here, the fact that "property damage" is expressly defined to include

14

loss of use in the third-party liability section of the Policy, but not in the first-party property section of the Policy under which 10012 Holdings claims coverage, further supports our holding.

Because 10012 Holdings alleges only that it lost access to its property as a result of COVID-19 and the governmental shutdown orders, and not that it suspended operations because of physical damage to its property, we agree with the District Court that 10012 Holdings cannot recover under either the Business Income or Extra Expense provisions.

II.    The Civil Authority Provision

10012 Holdings separately contends that the Policy's Civil Authority provision required Sentinel to pay for its lost income and extra expenses. This argument is unpersuasive for at least two reasons. First, 10012 Holdings acknowledges that coverage under the Civil Authority provision, which, as previously noted, also requires a "Covered Cause of Loss" damaging property, is contingent on showing that the civil authority orders — here, the executive orders issued by the Governor — resulted from a risk of direct physical loss to property in the vicinity of the gallery. But the executive orders were the result of the COVID-19 pandemic and the harm it posed to

15

human beings, not, as "risk of direct physical loss" entails, risk of physical damage to property. Shuttering a gallery because of possible human infection does not qualify as a "risk of direct physical loss." Second, even assuming that COVID-19 itself posed a "risk of direct physical loss," coverage under the Civil Authority provision contemplates that the executive orders prohibiting access to the insured's premises were prompted by risk of harm to neighboring premises. As the District Court observed, however, "the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's propert[y]; rather, it alleges that closure was the direct result of the risk of COVID-19 at Plaintiff's property." 10012 Holdings, Inc., 507 F. Supp. 3d at 488–89.

We therefore conclude that 10012 Holdings also cannot recover under the Policy's Civil Authority provision. We express no opinion as to whether the Policy would cover the different factual situations that amici suggest in this case.

16

III. Request for Certification to the New York Court of Appeals

Finally, in the alternative, 10012 Holdings asks that we certify this question of state law to the New York Court of Appeals[3] pursuant to our authority to certify "determinative questions of New York law [that] are involved in a cause pending before [us] for which there is no controlling precedent of the Court of Appeals." 22 N.Y.C.R.R. § 500.27(a). Certification is "a valuable device for securing prompt and authoritative resolution of unsettled questions of state law, especially those that seem likely to recur and to have significance beyond the interests of the parties in a particular lawsuit." Kidney v. Kolmar Lab'ys, Inc., 808 F.2d 955, 957 (2d Cir. 1987). If a question of state law is arising primarily in diversity cases, it may be particularly important to certify in order to ensure that state courts are not

---

[3] The proposed question is:

> Could the business interruption provision of an all risk insurance policy, which provides coverage for "direct physical loss of or damage to" covered property, be reasonably interpreted to cover losses of business property and income caused by government shutdown orders which suspended or severely curtailed business operations for purposes of public health and safety in response to the outbreak of the COVID-19 pandemic?

Appellant's Br. 29.

17

"substantially deprived of the opportunity to define state law." Gutierrez v. Smith, 702 F.3d 103, 116–17 (2d Cir. 2012). Certification in diversity cases "discourages forum shopping and affirm[s] that it is the state's High Court that is entitled to have the final say on any issue of state law." Id. at 117 (quotation marks omitted).[4] But, of course, certification is not costless: Because "the certification process always incurs the risk of some delay," Friends of Van Cortlandt Park v. City of New York, 232 F.3d 324, 327 (2d Cir. 2000), we must consider the age and urgency of the litigation, the impact that

---

[4] Sentinel has suggested that the fact that this is a diversity case cuts against certification. On occasion, dicta from our court has given credence to this view. See, e.g., Valls v. Allstate Ins. Co., 919 F.3d 739, 743 (2d Cir. 2019) ("In diversity cases, certification can effectively defeat a litigant's constitutionally endorsed entitlement to have its case adjudicated by a federal court rather than a state court, as certification will often effectively empower the state court to determine the outcome."); 53rd St., LLC v. U.S. Bank Nat'l Ass'n, 8 F.4th 74, 81 (2d Cir. 2021) (same). But this view against certification misses the mark. The right to a federal forum is not the right to a federal interpretation of state law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), left no doubt in that regard. Rather, it is the right to a neutral forum for the more subjective determinations involved in fact-finding and trial administration, where "state prejudices" conceivably could "obstruct, or control[] the regular administration of justice." Martin v. Hunter's Lessee, 14 U.S. 304, 347 (1816). By "preserving the parties' right to a federal determination of the factual questions in the suit," Ira P. Robbins, The Uniform Certification of Questions of Law Act: A Proposal for Reform, 18 J. LEGIS. 127, 135 (1992), certification on questions of law gives the parties in a diversity case exactly what they are due: a state determination of state law and a level playing field as to the facts surrounding the dispute.

18

costs and delays associated with certification will have on the litigants, and the costs that delay imposes on other cases that depend on resolution of the legal issues.

In this case, the scales tip slightly against certification. Many suits raising the same interpretive question have been filed in our district courts, and all these cases would be delayed by certification. While it likely would take no more than a few months for the New York Court of Appeals to accept or decline certification, see, e.g., Veloz v. Garland, 37 N.Y.3d 1006 (2021) (three months to decline certification), even that very reasonable delay becomes significant when so many cases are affected. If there were disagreement in the lower New York courts, certification might still be justified, but as we already noted, every New York court interpreting the phrase "direct physical loss" has read it the same way and denied coverage. See Barenboim v. Starbucks Corp., 698 F.3d 104, 109 (2d Cir. 2012) (explaining that the decision to certify a question to the Court of Appeals hinges in part on "whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it").

19

Finally, many cases raising the same issue are percolating through the New York state court system, and nine such cases are currently pending before New York's intermediate courts of appeals. See University of Pennsylvania Carey Law School, Appeals, Covid Coverage Litigation Tracker, https://cclt.law.upenn.edu/appeals/ (last visited Dec. 22, 2021) (showing that three appeals focused on this question are currently pending before New York's First Judicial Department, four are pending before the Second Judicial Department, and two are pending before the Fourth Judicial Department). Thus, the Court of Appeals will have every opportunity to address this question and either endorse or correct our interpretation of New York law, should it wish to do so. In the meantime, following what the lower New York courts have uniformly done is justified.

We therefore deny 10012 Holdings's alternative request to certify the proposed question to the New York Court of Appeals.

# CONCLUSION

We have considered 10012 Holdings's remaining arguments, including those relating to the Policy's Covered Property provision, and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.