RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

BROWN JUG, INC., dba Little Brown Jug, Inc., dba the
Backroom (21-2644); CHELSEA VENTURES, LLC, dba
Valiant Bar & Grill (21-2715); DINO DROP, INC., dba
M-Brew, dba Dino's Lounge, BUCCAROO, LLC,
DM BACH ENTERPRISES, LLC, BUCAROO TOO, LLC,
and 45 DEGREE HOSPITALITY, INC., (21-2718),

  *Plaintiffs-Appellants*,

  *v*.

CINCINNATI INSURANCE COMPANY,

  *Defendant-Appellee*.

Nos. 21-2644/2715/2718

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.

### <u>21-2644</u>
No. 2:20-cv-13003—Bernard A. Friedman, District Judge.

### <u>21-2715/2718</u>
Nos. 2:20-cv-13002 and 2:20-cv-12549—Mark A. Goldsmith, District Judge.

Decided and Filed:  February 23, 2022

Before:  COLE, LARSEN, and MURPHY, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  James J. Kelly, JIM KELLY LAW, PC, Farmington Hills, Michigan, for
Appellants. Dennis M. Dolan, Laurence J.W. Tooth, LITCHFIELD CAVO LLP, Chicago,
Illinois, Bradford S. Moyer, Jeffrey C. Gerish, PLUNKETT COONEY, Grand Rapids, Michigan,
for Appellee.

---

**OPINION**

---

COLE, Circuit Judge.  Businesses across the United States have turned to a variety of sources to recoup economic losses attributable to the COVID-19 pandemic.  Plaintiffs in this consolidated appeal are businesses that operate Michigan-based restaurants and entertainment venues that turned to their commercial property insurance policies, held by Cincinnati Insurance Company, for relief.  These policies contained three provisions under which Cincinnati Insurance would compensate a policy holder if—and only if—the policy holder suffered direct physical loss or damage to its covered property, or if loss to a non-policy holder's property prevented access to a policy holder's property.  Cincinnati Insurance denied plaintiffs' claims for relief because, in its view, neither the presence of the COVID-19 virus nor shutdown orders issued by the Michigan governor constituted physical loss or damage.

Plaintiffs sought a declaratory judgment that these pandemic-related losses were compensable under the policy.  Cincinnati Insurance moved to dismiss the complaints.  The district court found that, under Michigan law, "direct physical loss" to property covers only tangible harm or damage to property, rather than mere loss of use.  Therefore, the plaintiffs had failed to state a claim.  Because we believe that the Michigan Supreme Court would agree with this interpretation of the law, we affirm the dismissal of plaintiffs' complaints.

I. BACKGROUND

**A.  Factual Background**

The Brown Jug, Inc.; Chelsea Ventures, LLC; Dino Drop, Inc.; Buccaroo, LLC; DM Bach Enterprises, LLC; Bucaroo Too, LLC; and 45 Degree Hospitality, Inc. (collectively "plaintiffs") are Michigan-based businesses.  They operate restaurants that were covered by identical or substantially similar Cincinnati Insurance Company commercial property insurance policies early in the COVID-19 pandemic.  Like many other restaurants, plaintiffs' operations have been economically affected by the COVID-19 pandemic.  Michigan's stay-at-home orders curtailed access to plaintiffs' businesses and restricted in-person activities at their facilities.

Because of COVID-19 outbreaks in Michigan generally, plaintiffs' businesses have been unable to return to normal operations. Two restaurants, one belonging to Brown Jug and one belonging to Dino Drop, were even alleged sources of COVID-19 outbreaks.

To offset these losses, plaintiffs submitted claims for reimbursement to Cincinnati Insurance. The claims hinged on three policy provisions.[1] First, the "Business Income" provision, which provides:

> [Cincinnati Insurance] will pay for the actual loss of "Business Income" [plaintiffs] sustain due to the necessary "suspension" of [plaintiffs'] "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(Chelsea Policy, R. 15-1, PageID 2041.) Second, the "Extra Expense" provision, which provides that Cincinnati Insurance will reimburse plaintiffs for extra necessary expenses incurred during a "period of restoration" that would not have been incurred without "direct 'loss' to the property caused by or resulting from a Covered Cause of Loss." (*Id.*) Third, the "Civil Authority" provision, which provides that Cincinnati Insurance will pay for the "actual loss of 'Business Income' [plaintiffs] sustain and necessary Extra Expense" when "a Covered Cause of Loss causes direct damage to property *other than* Covered Property." (*Id.* at PageID 2042 (emphasis added).)

"Covered Cause of Loss" is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (*Id.* at PageID 1970.) The term "loss" is defined as "accidental physical loss or accidental physical damage." (*Id.* at PageID 2003.) "Period of Restoration" is defined as the time between the onset of the "direct 'loss'" and the earlier of "[t]he date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location." (*Id.* at PageID 2003–04.)

---

[1]Because the forms contain substantially similar language, we only review the language from the policy referenced in the complaint in *Chelsea Ventures, LLC v. Cincinnati Ins. Co.*, No. 20-13002, 2021 WL 2529821 (E.D. Mich. June 21, 2021); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

In sum, unless a "loss" occurs, no provision of the plaintiffs' insurance will kick in. While "loss" is defined by the policy, it is partially defined as itself, with no additional definition given for "physical" or "damage." Cincinnati Insurance denied each of plaintiffs' claims because it contended that there was no physical loss or damage to plaintiffs' properties—or, in the case of the Civil Authority provision, no physical loss or damage to property other than plaintiffs' covered property.

**B. Procedural History**

Plaintiffs filed suit against Cincinnati Insurance, seeking, among other relief, a declaration of plaintiffs' rights under their insurance policies. Cincinnati Insurance moved to dismiss all three complaints, arguing that plaintiffs failed to plausibly allege that COVID-19 or the stay-at-home orders caused tangible, concrete destruction of, or alteration to, the plaintiffs' properties. *See Brown Jug, Inc. v. Cincinnati Ins. Co.*, No. 2:20-cv-13003, 2021 WL 2163604, at *2 (E.D. Mich. May 27, 2021); *Dino Drop, Inc. v. Cincinnati Ins. Co.*, No. 20-12549, 2021 WL 2529817, at *3–4 (E.D. Mich. June 21, 2021); *Chelsea Ventures, LLC*, 2021 WL 2529821, at *3–4 (same).

The district court, noting that the Michigan Supreme Court has yet to opine on the meaning of "direct physical loss," elected to follow most courts and found that plaintiffs were required to allege facts indicating that COVID-19 caused tangible harm to their property or resulted in a loss of functionality of the property, rather than merely a loss of use. *Brown Jug*, at *4; *Dino Drop*, at *5; *Chelsea Ventures*, at *5. The district court in *Brown Jug* noted that the losses Brown Jug alleged—"money spent on cleaning supplies and the rearranging of furniture, customers barred from entry due to temporary Stay at Home Orders, and income lost due to lingering public health restrictions and public trepidation"—did not constitute "tangible, physical losses as required under the Policy." *Brown Jug*, at *4. Later, the district court—in both *Chelsea Ventures* and *Dino Drop*—found that "'[t]he mere presence of the virus on the physical structure of the premises does not amount to direct physical loss,' as 'coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property.'" *Dino Drop*, at *5 (quoting *Café La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1180 (S.D. Fla. 2021)); *Chelsea Ventures*, at *5.

Plaintiffs now appeal.

## II.  ANALYSIS

We review a district court's decision on a Rule 12(b)(6) motion to dismiss de novo. *Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013).

### A.  Definition of "Loss" Under Michigan Law

Operating under diversity jurisdiction, this court must apply "the law of the state's highest court." *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 571–72 (6th Cir. 2012) (quoting *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)).  Under Michigan law, when interpreting an insurance contract, courts apply the same contract construction principles that govern any other type of contract.  *Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 432 (Mich. Ct. App. 2005).  "The primary goal in the construction or interpretation of a contract is to honor the intent of the parties."  *Id.* (quotation marks, alteration, and citations omitted).  The best way to determine the parties' intent is to examine the ordinary and plain meaning of the language of the contract when read as a whole.  *Id.*  Where, however, there is no decision from a state's highest court that is directly on point—as is the case here—the court must make what is called an "*Erie* guess."  *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013).  When making an *Erie* guess, we "determine how that [state's highest] court, if presented with the issue, would resolve it."  *Id.* at 358–59.

Although the Michigan Supreme Court has not opined on the question, the Michigan Court of Appeals recently construed the term "direct physical loss" in a commercial policy insuring restaurants that claimed losses due to COVID-19.  *See Gavrildes Mgmt. Co. v. Mich. Ins. Co.*, ---N.W.2d ---, No. 354418, 2022 WL 301555, at *4 (Mich. Ct. App. Feb. 1, 2022).  The court found that "the word 'physical' necessarily requires the loss or damage to have some manner of tangible and measurable presence of effect in, on, or to the premises."  *Id.*  We recently also examined nearly identical policy language under Ohio and Kentucky law, specifically with regard to the COVID-19 pandemic.  "Relying on dictionaries, a leading treatise, and Ohio intermediate-appellate-court precedent," we concluded that the unambiguous policy

language requires a plaintiff to demonstrate "either destruction of the property or the owner's dispossession to show 'loss' and a direct physical alteration of the property to show 'damage.'" *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 649 (6th Cir. 2021) (quoting *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402–04 (6th Cir. 2021)); *see also Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 700 (6th Cir. 2022) (same, under Kentucky law). The Second, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, examining the common meaning of the word "loss" and applying state law to similar insurance policies, have all ruled similarly.[2]

Accordingly, giving the words "direct physical loss" their ordinary meaning, we find that plaintiffs must show destruction or alteration of the property, or dispossession from the property, to recover under their insurance policies.

**B. Whether the Plaintiffs Adequately Alleged Loss**

Applying this definition, we have concluded that COVID-19-related shutdown orders do not constitute "direct physical loss or direct physical damage" to property because "a loss of use simply is not the same as a physical loss." *Santo's*, 15 F.4th at 402; *see also Estes*, 23 F.4th at 702 ("In sum, neither the pandemic nor the government shutdown orders caused a 'direct' 'physical loss' to [plaintiff]'s 'property.'"). That being the case, any argument that Michigan's stay-at-home orders alone caused loss or damage to plaintiffs' businesses is precluded. Nevertheless, plaintiffs contend that *Santo's* and other similar cases do not control because they have adequately alleged facts that support a finding that the virus caused actual damage to their properties.

---

[2]*See 10012 Holdings, Inc. v. Sentinel Ins. Co.,* 21 F.4th 216, 220–21 (2d. Cir. 2021) (concluding "direct physical loss" requires physical damage, rather than mere loss of use, under New York law); *Terry Black's Barbecue, L.L.C., v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456–57 (5th Cir. 2022) (same, under Texas law); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 333 (7th Cir. 2021) (same, under Illinois law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (same, under Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890–92 (9th Cir. 2021) (same, under California law); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710–11 (10th Cir. 2021) (same, under Oklahoma law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (holding that neither the state's shelter in place orders nor any alleged COVID-19 particles in the air caused physical damage necessary to recover under the policy under Georgia law).

### 1. *Loss to Plaintiffs' Properties*

We have noted that a "'threadbare recital[] of' the contract's language combined with 'conclusory statements' saying that the coronavirus impaired some unidentified property in some unidentified manner" is not sufficient to survive a motion to dismiss. *Bridal Expressions LLC, v. Owners Ins. Co.*, No. 21-3381, 2021 WL 5575753, at *2 (6th Cir. Nov. 20, 2021) (per curiam) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). Therefore, a sufficient complaint alleging that the COVID-19 virus itself damaged an insured property would likely, at a minimum: (1) include allegations that COVID-19 was present at the covered property; (2) include allegations that COVID-19 materially altered all or part of the property; and (3) seek specific damages "for replacing that property and only for the time that property was damaged or lost." *Id.*

Here, plaintiffs have failed to adequately allege facts that support a finding that the virus caused actual property loss or damage. The earlier-filed complaints in *Brown Jug* and *Chelsea Ventures* merely allege that COVID-19 caused tangible harm to *individuals* who entered affected restaurants, and subsequently became infected. These complaints also allege that COVID-19 caused economic harm to the businesses themselves because customers were unwilling or unable to patronize them. But neither complaint credibly alleges that the presence of COVID-19 in any way caused "direct physical loss of or damage to" a covered property, or that the virus "physically and directly altered . . . property" by its mere presence. *See Santo's*, 15 F.4th at 402. The *Brown Jug* complaint comes closest, since one of its restaurants was the source of a COVID-19 outbreak. Even still, at no point does Brown Jug explain how its property was lost or damaged by the virus in a manner that required it to suspend operations to "repair[], rebuil[d] or replace[]" it for any period of time—a requirement to recover under the insurance policy.

The Dino Drop complaint is far more detailed. For one, it specifically alleges that "COVID-19 causes physical loss and damage by, among other things, destroying, distorting, corrupting, attaching to, and physically altering property, including its surfaces, and by rendering property unusable, uninhabitable, unfit for intended function, dangerous, and unsafe." (Dino Drop, Second Amend. Compl., R. 14, PageID 1402–03.) The Dino Drop complaint alleges that when droplets containing the virus land on surfaces, they transform that which they touch into

dangerous "fomites."   A "fomite" is an inanimate object (such as a countertop, dish, or doorknob) that may carry and spread infectious agents (such as bacteria or viruses).  *Fomite*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fomite.

However, upon closer examination, the Dino Drop complaint suffers from the same deficiencies as the complaints in *Brown Jug* and *Chelsea Ventures*—it does not actually allege that the property was harmed.[3]  Dino Drop alleges that several of its employees and customers tested positive for COVID-19, likely after exposure to the virus by a live band that played at one of its restaurants.  This outbreak purportedly "damaged" the property, because Dino Drop had to take remediation measures, such as cleaning and reconfiguring spaces, to reduce the threat of COVID-19.  These, however, are precisely the sorts of losses we have previously determined are "not tangible, physical losses, but economic losses."  *Universal Image Prods.*, 475 F. App'x at 573; *see also id.* at 571 (concluding that "cleaning and moving expenses, lost (undamaged) improvements attached to [a] . . . building, as well as lost business income" are not recoverable tangible damages under Michigan insurance law).

"This is not to say that no circumstances can exist under which a loss of use, unaccompanied by any physical alteration to property, might be so pervasive as effectively to qualify as a complete physical dispossession of property and thus a 'direct physical loss.'" *Sandy Point Dental*, 20 F.4th at 334.  Plaintiffs have just failed to plead them here.  Plaintiffs' factual allegations are the kind that are "merely consistent with a defendant's liability," and therefore insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quotations omitted). Because plaintiffs have failed to adequately allege "loss" to their property due to COVID-19, they "fail[] to plead sufficient facts to state a claim" for breach of contract under the Business Income and Extra Expenses provisions.  *Id.* at 687.

---

[3]This conclusion does not apply to the claims related to an electrical fire that allegedly occurred in August 2020.  The two counts pertaining to the fire were dismissed for lack of jurisdiction, as Dino Drop conceded they did not meet the amount in controversy necessary to sustain diversity jurisdiction.  *Dino Drop*, 2021 WL 2529817 at *10.

*2. Loss to Properties Other Than Plaintiffs'*

Plaintiffs have also failed to allege that COVID-19 caused loss or damage to properties "other than the covered property" as required to plead a breach of the Civil Authority provision. The Civil Authority Provision "is contingent on a 'Covered Cause of Loss' damaging property—albeit, as relevant here, property off the business premises." *Gilreath Fam. & Cosm. Dentistry*, 2021 WL 3870697, at \*2. No complaint at any point in time alleges more than conclusory statements that physical loss or damage to properties other than their own occurred, so they have failed to state a breach of contract claim against Cincinnati Insurance.

Plaintiffs argue that the shutdown orders issued early in the COVID-19 pandemic permit recovery under Michigan law, based on a line of cases following government shutdown orders issued during riots in Detroit in the summers of 1967 and 1968. *See Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 208 N.W.2d 569, 570 (Mich. Ct. App. 1973) (per curiam); *Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434, 437 (Mich. Ct. App. 1973). In those cases, although "[n]one of the plaintiffs' establishments were physically damaged," Michigan courts concluded that the plaintiffs suffered a compensable loss under their respective business interruption insurance policies. *Sloan*, 207 N.W.2d at 435, 437; *Southlanes Bowl*, 208 N.W.2d at 570.

However, the shutdown orders issued in 2020 are demonstrably dissimilar to those issued in the late-1960s. In the 1967 and 1968 orders, the Governor of Michigan implemented a curfew closing "all places of amusement," in response to physical damage to property in Detroit. These orders completely "prevent[ed] access to plaintiffs' place of business." *Sloan*, 207 N.W.2d at 435, 437. In contrast, the Michigan shutdown orders issued in 2020 permitted and encouraged businesses to remain operational. For example, Michigan Executive Order 2020-09[4] closed "places of public accommodation" to "ingress, egress, use, and occupancy by members of the public," but provided:

> Places of public accommodation subject to this section are encouraged to offer food and beverage using delivery service, window service, walk-up service, drive-

---

[4]Mich. Exec. Order No. 2020-09(1)(h) (2020), available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521789--,00 html.

through service, or drive-up service, and to use precautions in doing so to mitigate the potential transmission of COVID-19, including social distancing.  In offering food or beverage, a place of public accommodation subject to this section may permit up to five members of the public at one time in the place of public accommodation for the purpose of picking up their food or beverage orders, so long as those individuals are at least six feet apart from one another while on premises.

*Id.*  Therefore, access to the area immediately surrounding the plaintiffs' properties was limited, but not "prohibited" as required by the Civil Authority provision.  *See Santo's*, 15 F.4th at 402 ("It was as if the government temporarily rezoned all restaurants in the State solely for takeout dining.").  Accordingly, plaintiffs have failed to allege a breach of the Civil Authority provision.

## III.  CONCLUSION

For the foregoing reasons, we affirm.