21-1502
*Buffalo Xerographix v. Hartford Fire Ins.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of September, two thousand twenty-two.

PRESENT:   Pierre N. Leval,
           Barrington D. Parker,
           Steven J. Menashi,
                *Circuit Judges.*

_____

BUFFALO XEROGRAPHIX, INC., SHATKIN F.I.R.S.T. LLC, and TODD E. SHATKIN DDS PLLC, for themselves and on behalf of a class of similarly situated policyholders,

　　　*Plaintiffs-Appellants,*


　　v.　　　　　　　　　　　　　　　　　　　No. 21-1502


SENTINEL INSURANCE COMPANY, LIMITED, HARTFORD CASUALTY INSURANCE COMPANY,

HARTFORD INSURANCE COMPANY OF THE MIDWEST, THE HARTFORD INSURANCE GROUP a.k.a. THE HARTFORD FINANCIAL SERVICES GROUP, INC.,

Defendants-Appellees,

HARTFORD FIRE INSURANCE COMPANY, HARTFORD ACCIDENT & INDEMNITY COMPANY, HARTFORD INSURANCE COMPANY OF ILLINOIS, HARTFORD UNDERWRITERS INSURANCE COMPANY, NEW ENGLAND INSURANCE COMPANY, NEW ENGLAND REINSURANCE CORPORATION, PACIFIC INSURANCE COMPANY, LIMITED, PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD, TRUMBULL INSURANCE COMPANY, and TWIN CITY FIRE INSURANCE COMPANY,

Defendants.[*]

_____

| | |
|---|---|
| *For Plaintiffs-Appellants*: | CHRISTOPHER M. BERLOTH (Charles C. Ritter, Jr., Steven W. Klutkowski, and Thomas D. Lyons, *on the brief*), Duke Holzman Photiadis & Gresens LLP, Buffalo, NY. |
| *For Defendants-Appellees*: | ANJALI S. DALAL, Wiggin & Dana LLP, New York, NY (Jonathan M. Freiman, Wiggin & Dana LLP, New Haven, CT, and Charles A. |

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

Michael, Steptoe & Johnson LLP, New York, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Western District of New York (Crawford, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

The plaintiffs-appellants are New York businesses representing a putative class of similarly situated businesses affected by Governor Andrew Cuomo's order of business closures in response to the COVID-19 pandemic. The businesses appeal the district court's dismissal, for failure to state a claim, of a putative class action complaint against various insurers who denied coverage for losses that resulted from those closures. In the proceedings before the district court, the businesses claimed to be entitled to insurance coverage because the closures in response to COVID-19 were "direct physical losses" under the insurers' policies. The businesses sought relief for breach of contract and for violation of New York's General Business Law § 349.

The district court dismissed the complaint in two separate orders. First, the district court held that the Hartford Insurance Group ("HIG") was not responsible

3

for insurance policies that its subsidiaries issued to the businesses. The district court therefore granted the Hartford Insurance Group's motion to dismiss. *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, 540 F. Supp. 3d 382, 392-93 (W.D.N.Y. 2021). Second, the district court held that the businesses failed to state a claim against the subsidiary insurers because the state-mandated closures did not qualify as a "direct physical loss" eligible for insurance coverage.

We affirm the judgment of the district court. HIG cannot be held liable for the insurance policies issued by its subsidiaries because it was not a signatory to those policies, and it neither authorized its subsidiaries to act as its agents in issuing the policies nor created appearances of authority in the subsidiaries to issue policies for it. The businesses also cannot state a claim against the subsidiary insurers because the closures due to COVID-19 do not qualify as a direct physical loss under the policies. We assume the parties' familiarity with the remaining facts, procedural history, and arguments on appeal.

# I

The businesses argue that HIG evinced an intent to be bound by the insurance policies of its subsidiaries because each of the insurance policies displayed the HIG logo and corporate officers of HIG signed the policies and are

referenced throughout the contract. As the district court observed, however, the use of a parent company's logo is not enough to make the parent company a signatory to a contract. The insurance policies define the counterparty as "the Company providing this insurance," namely the subsidiary insurers, and the policy language does not contradict that definition. *Buffalo Xerographix*, 540 F. Supp. 3d at 392.

The businesses also argue that HIG may be liable for the policies under an agency theory. A principal may be bound by the representations of its agent if the principal's words or conduct addressed to the agent sustain a reasonable express or implied inference "that the principal has consented to the agent's performance of a particular act" or if the principal creates appearances that reasonably cause a third person to believe that "the principal consents to have [an] act done on his behalf by the person purporting to act for him." *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

As the district court correctly noted, a reasonable observer would not infer that HIG intended to be bound by the insurance policies issued by its subsidiaries. The policies clearly indicate that each contract was between the insured party and the subsidiary insurer. Each subsidiary insurer maintained its own pool of risk, for

which the other subsidiaries and affiliates were not responsible. HIG did not, either expressly or impliedly, authorize its subsidiary insurers to issue policies on its behalf, and it did not create appearances that would reasonably lead third persons to believe that the subsidiaries were so authorized.

## II

The businesses argue that the losses associated with the closure of businesses due to COVID-19 qualify as "direct physical loss" under the insurance policies and therefore should be covered by the subsidiary insurers. The businesses point to a Virus Exclusion Clause and a Virus Limitation Clause that the subsidiary insurers have included in other policies but did not include the policies at issue here. Those clauses, introduced in response to the SARS epidemic of 2006, limit or exclude coverage for direct physical loss or damage "caused by" a virus. The businesses argue that these clauses indicate that "direct physical loss" may be caused by a virus and that the closures due to COVID-19 are such a direct physical loss.

We need not decide whether direct physical loss may be caused by viruses in other circumstances. Our court has already held that closures of businesses due to the presence of COVID-19 do not qualify as a "direct physical loss." *10012*

6

*Holdings v. Sentinel Ins. Co.*, 21 F.4th 216, 220-21 (2d Cir. 2021). In *10012 Holdings*, we noted that in *Roundabout Theatre Co. v. Cont'l Cas. Co.*, the Appellate Division refused to treat a street closure following a construction accident as a "loss of … property" under an insurance contract. 302 A.D.2d 1, 5-6 (N.Y. App. Div. 1st Dep't 2002). Although the plaintiff theater company lost access to its building—and consequently lost income—there was no direct physical loss or damage eligible for coverage under the contract because the building was not physically affected. *Id*. at 8. Based on the New York case law, we concluded that "under New York law the terms 'direct physical loss' and 'physical damage' … do not extend to mere loss of use of a premises." *10012 Holdings*, 21 F.4th at 222. Instead, there must be "actual physical loss of or damage to the insured's property" to qualify for coverage. *Id*. Neither the availability of a Virus Exclusion or Limitation Clause nor the businesses' allegation that COVID-19 was present at their properties leads to a different conclusion in this case. Even if there are circumstances in which a virus might cause the actual physical loss of or damage to property, the presence of COVID-19 on surfaces at a retail store or office would not cause the store or office to be physically lost or damaged. *See Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*,

No. 21-1082-CV, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022). Accordingly, the

businesses cannot state a claim, and we affirm the judgment of the district court.

* * *

We have considered appellants' remaining arguments, which we conclude

are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the

district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8