[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11974

_____

DUKES CLOTHING, LLC,

Plaintiff-Appellant,

*versus*

THE CINCINNATI INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:20-cv-00860-GMB

_____

Before NEWSOM, TJOFLAT, and HULL, Circuit Judges.

HULL, Circuit Judge:

This case presents an increasingly common question of insurance coverage and its interaction with the COVID-19 pandemic. The question here—arising under Alabama law—is whether an insurance policy that provides coverage for loss of business income caused by "accidental physical loss or accidental physical damage" to the insured's property covers losses and expenses caused by COVID-19.

Alabama's Supreme Court and intermediate appellate courts have not (1) interpreted those coverage terms—physical loss or damage; or (2) determined whether losses and expenses caused by COVID-19 are covered under similar policies. However, our Court recently examined insurance policies with nearly identical terms and held those terms—physical loss or damage—plainly require some "tangible alteration" or "actual change" to the insured's property and do not cover losses and expenses caused by COVID-19. *See SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358–59 (11th Cir. 2022) (applying Florida law); *Henry's La. Grill v. Allied Ins. Co. of Am.*, —F.4th—, No. 20-14156, 2022 WL 1815874, at *2–3 (11th Cir. June 3, 2022) (applying Georgia law). In reaching this conclusion, our Court observed that every federal and state appellate court to consider the issue has held that the presence of COVID-19 causes a business intangible harm, not physical loss or damage. *See SA Palm Beach*, 32 F.4th at 1358–59; *Henry's*, 2022 WL 1815874, at *3.

After review and with the benefit of oral argument, we conclude that Alabama appellate courts would reach the same result—which is that the policy here provides no coverage because COVID-19 did not cause physical loss or damage to the insured's property.  Thus we affirm the dismissal of Dukes's complaint.

## I.    BACKGROUND

In response to the COVID-19 pandemic, governments across the country imposed various occupancy limitations on non-essential businesses to slow the spread of the virus.  Beginning in March 2020, Alabama's Governor and State Health Officer issued a series of executive orders restricting operations of non-essential businesses, including retail stores.

Dukes Clothing, LLC ("Dukes") operated two clothing stores—one in Tuscaloosa, Alabama, and one in Mountain Brook, Alabama.  As a result of the state orders and a customer's exposure to COVID-19, Dukes was forced to close its doors.  These closures resulted in lost business income for Dukes.

Dukes's insurer, The Cincinnati Insurance Company ("Cincinnati"), had issued an all-risk commercial insurance policy to Dukes, effective from September 10, 2018, to September 10, 2021.  Dukes submitted a claim under its policy to recover its loss of business income due to its store closures caused by COVID-19.  Cincinnati denied the claim on the basis that Dukes's income loss

was not caused by a direct physical loss or damage to the insured's property.  We set forth the relevant coverage provisions.[1]

### A. Dukes's Policy

The relevant form in Dukes's policy is the "Business Income (and Extra Expense) Coverage Form."

On that form, the "Business Income" provision states that Cincinnati "will pay for the actual loss of 'Business Income'" Dukes sustains "due to the necessary '*suspension*'" of its operations. However, "[t]he '*suspension*' must be caused by direct '*loss*' to property at 'premises,'" and the coverage extends through "the '*period of restoration*'."  (emphases added).

The policy provides that "words and phrases that appear in quotation marks have special meaning" defined in the policy.  The terms "loss," "suspension," and "period of restoration" are all in quotation marks.

Importantly here, the policy defines "loss" as "accidental *physical loss* or accidental *physical damage*."  (emphasis added). "Suspension" means "[t]he slowdown or cessation" of business activities.  And the "[p]eriod of restoration . . . [b]egins at the time of direct 'loss'," and "[e]nds on the earlier of: (1) [t]he date when

---

[1] Dukes did not attach the policy to its complaint.  But since Cincinnati attached the policy to its motion to dismiss, we can consider it at this stage because the policy is "(1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).

the property at the 'premises' should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or (2) [t]he date when business is resumed at a new permanent location."

Accordingly, the "suspension" that triggers "Business Income" coverage must be caused by direct "accidental physical loss or accidental physical damage" to the insured's property. And the "period of restoration" begins at the time of the direct "accidental physical loss or physical damage," and it ends either when the property is "repaired, rebuilt, or replaced," or the "business is resumed at a new permanent location." Further, the "Extra Expense" coverage is provided "only if . . . 'Business Income' coverage applies."

### B. Dukes's Lawsuit

After denial of its claim, Dukes filed this action against Cincinnati, alleging breach of contract, bad faith, and negligence. Dukes's complaint alleged that COVID-19 is a "causative agent of property damage." Dukes asserted that it established business interruption loss at both its locations caused by COVID-19 generally, civil authority orders, and a customer's exposure to COVID-19.

Cincinnati filed a motion to dismiss, which argued that Dukes's complaint failed to state a claim because it did not allege a suspension caused by direct physical loss or damage. *See* Fed. R. Civ. P. 12(b)(6). Specifically, Cincinnati contended that (1) COVID-19 did not cause physical loss or damage because the

6                    Opinion of the Court                    21-11974

virus could be removed by traditional cleaning; (2) the policy required a tangible alteration of the property; and (3) the lack of a virus exclusion in the policy was irrelevant because there was no physical loss or damage to trigger coverage in the first place.

In response, Dukes argued that Cincinnati breached its contract because all-risk policies, like the one here, "automatically cover[] any loss not explicitly omitted." And Dukes contended that it plausibly alleged physical loss or damage because its complaint presented an "exhaustive review of why the COVID-19 novel coronavirus is considered to be a cause of physical loss or property damage." As to bad faith, Dukes argued that Cincinnati "made a predetermined decision to deny the claim before it was made" and did not investigate Dukes's claim.

The magistrate judge granted Cincinnati's motion to dismiss.[2] Because no Alabama appellate court had addressed whether COVID-19 constitutes a direct physical loss or damage to property, the magistrate judge relied on dictionary definitions and Alabama law's tools of insurance contract construction. As to the policy, the magistrate judge determined that (1) direct "physical loss" or "physical damage" required an actual physical alteration to the property; and (2) COVID-19 did not constitute direct physical loss or damage to Dukes's property.[3] The magistrate judge thus

---

[2] The parties consented to having a magistrate judge conduct the proceedings.

[3] Because there was no coverage, the magistrate judge (1) dismissed the bad faith and negligence claims; and (2) declined to address the pollution

concluded that Dukes had not alleged facts sufficient to establish coverage under its policy.

## II.    STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255 (11th Cir. 2015). "[W]e take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). To have a facially plausible claim, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

We also review *de novo* a district court's determination of state law. *See SA Palm Beach*, 32 F.4th at 1356.

---

exclusion.  Although Dukes at one point invoked the "Civil Authority" coverage in its policy, Dukes does not raise that coverage here so we do not address that provision.

## III.    DISCUSSION

### A.  Alabama Law on Interpreting Insurance Policies

When examining insurance policies, Alabama courts consider the language of the policy as a whole, not in isolation. *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999). Whether an insurance policy is ambiguous is a question of law for the courts. *See Crook v. Allstate Indem. Co.*, 314 So. 3d 1188, 1193 (Ala. 2020).

If a word or phrase is not defined in a policy, courts "should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Id.* (quotation marks omitted). The words and phrases are thus "given a rational and practical construction." *Slade*, 747 So. 2d at 309. If a word or phrase is genuinely ambiguous, the policy "should be construed liberally" in favor of the insured. *Travelers Cas. & Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695, 700 (Ala. 2012) (quotation marks omitted).

"The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Slade*, 747 So. 2d at 308–09; *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So. 2d 877, 880 (Ala. Civ. App. 2001) (noting that Alabama courts have "looked to dictionary definitions"). Policy language is not rendered ambiguous just

because parties disagree about the meaning of a policy provision. *See Travelers*, 117 So. 3d at 699.

There are no Alabama appellate court decisions interpreting the relevant terms here—physical loss or damage—or interpreting these types of all-risk policies in the COVID-19 context. As such, our duty is "to decide what the state courts would hold if faced with" the question of whether lost business income resulting from COVID-19 is covered by this all-risk insurance policy. *Taylor v. Williams*, 528 F.3d 847, 850 (11th Cir. 2008) (quotation marks omitted) (applying this duty to a question under Georgia law). To decide how Alabama appellate courts would interpret physical loss or damage, we first examine our Court's decisions interpreting nearly identical terms under Florida and Georgia law.

## B. Eleventh Circuit Precedent

This Court interpreted a similar insurance policy in *SA Palm Beach*. In that case, this Court consolidated four cases—all arising under Florida law—to determine whether the insureds' respective all-risk insurance policies covered losses and expenses incurred as a result of COVID-19. 32 F.4th at 1350.

Three of the policies at issue in *SA Palm Beach* had terms nearly identical to the terms in Dukes's policy. *See id.* at 1351–54 (reciting each of the three relevant policies). The three policies covered "actual loss of Business Income" if the suspension in the insureds' business operations was caused by "direct physical loss of or damage to property." *Id.* (quotation marks omitted).

In *SA Palm Beach*, this Court noted that "every federal and state appellate court" to that point had found "no coverage for loss of use based on intangible and incorporeal harm to the property due to COVID-19 and the [state and local] closure orders." *Id.* at 1358–59 (collecting cases from state and federal courts, including 9 federal circuit courts, applying law from 15 states). Finding no indication that the Florida Supreme Court would reach a different conclusion, this Court followed the "majority view" and held that "physical loss" or "physical damage" requires some tangible alteration to the insured's property.[4] *Id.*

From there, our Court analyzed Florida caselaw regarding what constitutes a tangible alteration to property and concluded that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 1361. While COVID-19 "require[s] that the properties be cleaned to eliminate particles of the virus," this Court held that is not enough to constitute a tangible alteration to the property and thus not enough to establish coverage under the policy. *Id.*

Similarly, this Court concluded in *Henry's* that the same analysis applied to all-risk insurance policies interpreted under Georgia law. *See* 2022 WL 1815874, at *2–3. Under the policy at

---

[4] Our Court in *SA Palm Beach* did vacate in part the district court's dismissal on one claim that involved a policy provision not relevant to this appeal because that provision did not include the physical loss or damage language. *See SA Palm Beach*, 32 F.4th at 1362–63.

issue in *Henry's*, Allied Insurance would cover lost business income if the insured's operations were suspended because of "direct physical loss of or damage to" the insured's property. *Id.* at *1.

In *Henry's*, our Court began with Georgia law and noted that under Georgia law, "[b]eing physical meant that the loss or damage had to make the property unsatisfactory for future use or meant that the property would need repairs before it would be usable again." *Id.* at *2 (quotation marks omitted). Put differently, "a 'direct physical loss' always involves a tangible change to property." *Id.* Since COVID-19 does not cause a "tangible alteration of the property" such that the property could not be used in the future or needed repairs to be used, lost business income resulting from COVID-19 could not constitute a "physical loss of or damage to" the property necessary for insurance coverage. *Id.* at *3.

### C. Alabama Law

Similarly, we conclude that under Alabama law "accidental physical loss or accidental physical damage" in Dukes's insurance policy requires the insured to show tangible alteration to the property in order to establish coverage.

As to our Circuit precedent, the only two differences between the policy here and the three in *SA Palm Beach* or the one in *Henry's* are that (1) the phrase "accidental physical loss or accidental physical damage" in Dukes's policy is in a definition

section for the word "loss," whereas the other policies included the entire phrase "physical loss of or damage to property" in each relevant provision; and (2) the word "accidental" precedes "physical loss" and "physical damage." Nonetheless, all the relevant policies require a suspension caused by physical loss or damage for coverage to attach. We conclude that there is no material or principled difference between the policies.

Further, Alabama's tools of insurance contract construction are consistent with the rules applied in our precedent. *See SA Palm Beach*, 32 F.4th at 1356; *Henry's*, 2022 WL 1815874, at *2. We conclude that Dukes's policy language here is not genuinely ambiguous because it can be understood by assigning the phrases at issue their ordinary meaning. As our Court noted in *Henry's*, the dictionary definition supports such a reading because "[t]o be physical, the loss itself must be 'of or relating to things perceived through the senses as opposed to the mind'; it must be 'tangible or concrete.'" *Henry's*, 2022 WL 1815874, at *2 (quoting *New Oxford American Dictionary* 1321 (3d ed. 2010)).

The tangible alteration interpretation also harmonizes the "accidental physical loss or accidental physical damage" phrase with the policy as a whole. *See Slade*, 747 So. 2d at 309 ("[A] court cannot consider the language in the policy in isolation, but must consider the policy as a whole."). The "Business Income" provision, upon which Dukes relies on appeal, incorporates the phrases "suspension" and "period of restoration." The "suspension" must be caused by "accidental physical loss or

accidental physical damage" to the property. The "period of restoration" either ends when the property should be "repaired, rebuilt, or replaced," or "when business is resumed at a new permanent location." That language—repaired, rebuilt, and replaced—also "confirms that a 'physical loss of' property must involve tangible change to the property." *Henry's*, 2022 WL 1815874, at *3.

We further conclude that if a property or surface can be cleaned and quickly restored to its previous condition, then the property has not suffered direct "accidental physical loss or accidental physical damage" such that it has been tangibly altered. *See id.*; *SA Palm Beach*, 32 F.4th at 1361. A temporary loss of use, without more, cannot satisfy the physical loss or damage requirement in an insurance policy like the one here.

Pursuant to that ordinary meaning, Dukes's claim that its all-risk insurance policy covers its losses and expenses incurred as a result of COVID-19 must fail. Put simply, Dukes did not state a claim that COVID-19 caused physical damage to its property because (1) COVID-19 does not physically alter the property it rests on; and (2) COVID-19 particles can be removed from a surface by standard cleaning measures. Thus, the closures stemming from the pandemic—whether by government order or by customer exposure—do not constitute physical loss or damage under Dukes's policy.

## IV.    CONCLUSION

We affirm the magistrate judge's dismissal of Dukes's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**AFFIRMED.**