**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 3, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

SAGOME, INC., d/b/a L'Hostaria,

    Plaintiff - Appellant,

v.

THE CINCINNATI INSURANCE
COMPANY,

    Defendant - Appellee.

------------------------------

UNITED POLICYHOLDERS;
AMERICAN PROPERTY CASUALTY
INSURANCE ASSOCIATION,

    Amici Curiae.

No. 21-1359

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:21-CV-00097-WJM-GPG)**
_____

Bradley A. Levin (Susan S. Minamizono with him on the briefs), Levin Sitcoff Waneka
PC, Denver, Colorado, for Plaintiff-Appellant.

Daniel G. Litchfield (Alan I. Becker and Michael P. Baniak, Litchfield Cavo LLP,
Chicago, Illinois, and Conor P. Boyle, Hall & Evans LLC, Denver, Colorado, with him
on the brief) for Defendant-Appellee.

Timothy M. Garvey, McDermott Law, LLC, Denver, Colorado, filed an Amicus Curiae
Brief for United Policyholders, in support of Appellants.

Laura A. Foggan, Crowell & Moring LLP, Washington, DC, and Wystan Ackerman, Robinson & Cole LLP, Hartford, Connecticut, filed an Amicus Curiae Brief for American Property Casualty Insurance Association in support of Appellee.

_____

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

Like many businesses during the COVID-19 pandemic, Sagome, Inc.'s restaurant, L'Hostaria, suffered significant financial losses from reduced customer traffic and government lockdowns and restrictions. And like many businesses, it sought to recover under its comprehensive general insurance policy. And like many insurers, The Cincinnati Insurance Company denied coverage because the virus did not impose physical loss or damage as required by the policy.

Sagome sued, but the district court concluded its financial losses were not covered. Addressing Sagome's coverage under Colorado law, we agree and affirm. COVID-19 did not cause Sagome to suffer a qualifying loss because there was never any direct physical loss or damage to L'Hostaria.

## I.  Background

Sagome operated L'Hostaria in Aspen, Colorado. Cincinnati insured Sagome throughout 2020. The insurance policy provided Cincinnati would "pay for direct 'loss'" to Sagome's covered property "caused by or resulting from any

Covered Cause of Loss."[1]  Supp. App. 30.  In turn, "'Loss' mean[t] accidental *physical loss* or accidental *physical damage*."  Supp. App. 65 (emphases added).  The policy did not define "physical loss" or "physical damage."

Additionally, the policy provided that Cincinnati would pay for lost business income if Sagome suspended operations during a "period of restoration" if the suspension was "caused by or result[ed] from a Covered Cause of Loss."[2]  Supp. App. 45 (internal quotation marks omitted).  The "period of restoration" ended when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality," when business "resumed at a new permanent location," or on a specified date, whichever occurred first.[3]  Supp. App. 68.  And

---

[1] The policy provided, "We will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."  Supp. App. 30.

[2] The policy provided,

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

Supp. App. 45.

[3] The policy provided the period of restoration

> [e]nds on the earlier of: (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; (2) The date when business is resumed at a new permanent location; or (3)

3

the policy included civil authority coverage that was triggered when a covered

loss damaged *other* property, causing the government to prohibit access to

Sagome's property.[4]

COVID-19 struck in March 2020, and the resulting government orders

caused Sagome to temporarily close.  It was able to reopen in late April with

---

The number of consecutive months after the date of direct physical "loss" indicated in the Schedule of this endorsement.

Supp. App. 68.

[4] The policy provided,

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply: (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.  This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.  This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end: 1) 30 consecutive days after the time of that action; or 2) When your "Business Income" coverage ends; whichever is later.

Supp. App. 46.

limited curbside pickup and outdoor dining, and it could later operate limited indoor dining.

Sagome provided timely notice of its losses to Cincinnati, which denied coverage. Sagome sued, alleging breach of contract, bad faith, and violation of Colorado insurance law. It also sought a declaratory judgment that its losses were covered.

Cincinnati successfully moved for Rule 12(b)(6) dismissal. Fed. R. Civ. P. 12(b)(6). The district court concluded COVID-19 did not physically damage Sagome's property. And "because no neighboring properties suffered physical loss triggering coverage," Sagome was not entitled to civil authority coverage. App. 86. Deeming any amendment futile, the court dismissed with prejudice.

## II. Analysis

Sagome contends the insurance policy covered losses resulting from the COVID-19 pandemic. According to Sagome, it is entitled to coverage because physical loss or damage includes loss of use when property is rendered unsafe and dangerous. As we explain, this reading does not comport with the policy's plain language and is not compelled by Colorado law.

### A. The Policy

As an initial matter, whether COVID-19 causes direct physical loss or damage under a property insurance policy is an open question in Colorado.[5] Relying on relevant precedent from Colorado and other jurisdictions, we answer that question in the negative and conclude Sagome was not covered.

We review a Rule 12(b)(6) dismissal de novo and apply the same standards as the district court. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). To survive, "a complaint must allege facts that, if true, state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). We view the alleged facts "in the light most favorable to the plaintiff." *Id.* Because the policy covers a Colorado restaurant, we apply Colorado law. *See Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

Under Colorado law, "[w]e construe an insurance policy according to principles of contract interpretation," giving effect to the parties' intentions and

---

[5] We note that every circuit to have addressed this question has found COVID-19 does not cause physical loss or damage under similar policy language. *See, e.g.*, *SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 36 F.4th 23 (1st Cir. 2022) (Massachusetts law); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216 (2d Cir. 2021) (New York law); *Uncork and Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926 (4th Cir. 2022) (West Virginia law); *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656 (5th Cir. 2022) (per curiam) (Texas law); *Santo's Italian Café, LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021) (Ohio law); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021) (Illinois law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021) (Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021) (California law); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704 (10th Cir. 2021) (Oklahoma law), *cert. denied*, 142 S. Ct. 2779 (2022); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 35 F.4th 1318 (11th Cir. 2022) (Georgia law).

reasonable expectations. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). We enforce the policy's plain language unless it is ambiguous, which occurs when "it is susceptible to more than one reasonable interpretation." *Id.*

In another COVID-19 case, we recently addressed the meaning of "direct physical loss" under Oklahoma law. *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2779 (2022). There, Goodwill Industries sought to recover under similar policy language after it closed stores to comply with government orders. *Id.* at 708. Relying on dictionary definitions, we concluded "a 'direct physical loss' requires an immediate and perceptible destruction or deprivation of property." *Id.* at 710. But since COVID-19 did not destroy any property, and Goodwill Industries "never lost physical control of its buildings or merchandise from its stores," we found no coverage. *Id.* A contrary conclusion would have required us to improperly "ignore the word 'physical.'" *Id.* at 711. We noted the policy's period of restoration clause bolstered our conclusion because Goodwill Industries "had nothing to repair, rebuild, or replace before it could resume operations." *Id.* To the contrary, it "simply had to wait until the government lifted the restrictions." *Id.*

Sagome posits a few reasons why *Goodwill Industries* is inapplicable. First, it asserts the *Goodwill Industries* court was not bound by the relevant Colorado precedent of *Western Fire Insurance Co. v. First Presbyterian Church*,

7

437 P.2d 52 (Colo. 1968). But as we explain below, *Western Fire* does not compel a different result. Second, it asserts Goodwill Industries did not allege the virus was on its premises. The pertinent question, however, is not simply whether COVID-19 was present, but whether it caused physical loss or damage. Third, Sagome notes that unlike its policy, Goodwill Industries' policy contained a virus exclusion. True, but we only analyzed the exclusion as an alternative basis for finding no coverage. *Goodwill Indus.*, 21 F.4th at 712. Finally, Sagome asserts the Colorado Supreme Court takes a more skeptical approach to insurance contracts than the Oklahoma Supreme Court. But both Colorado and Oklahoma law require us to give an unambiguous policy term its plain, ordinary meaning. *See Hoang*, 149 P.3d at 801; *Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002). And doing so here establishes COVID-19 did not cause direct physical loss. It did not destroy Sagome's property. *Goodwill Indus.*, 21 F.4th at 710. And Sagome's "temporary inability to use its property for its intended purpose"—a fully-functioning restaurant—was not a qualifying loss. *Id.* at 711.

For the same reasons, Sagome did not suffer "direct physical damage." *Webster's Third New International Dictionary* (2002) defines "direct" as "marked by absence of an intervening agency, instrumentality, or influence: immediate"; "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"; and damage as "injury or harm to person, property, or reputation."

8

For Sagome to be covered, COVID-19 had to injure or harm its property in some physical manner. But Sagome did not—and could not—plead such damage, because COVID-19 does not physically injure or harm property. Most courts have agreed that this type of policy language does not cover COVID-19 losses. *See, e.g.*, *Dukes Clothing, LLC v. Cincinnati Ins. Co.*, 35 F.4th 1322, 1328 (11th Cir. 2022) (Alabama law) (finding the insured "did not state a claim that COVID-19 caused physical damage to its property because (1) COVID-19 does not physically alter the property it rests on; and (2) COVID-19 particles can be removed from a surface by standard cleaning measures"); *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 660 (5th Cir. 2022) (per curiam) (Texas law) (internal quotation marks omitted) ("While COVID-19 has wrought great physical harm to people, it does not physically damage property within the plain meaning of physical."); *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266, 1276 (Mass. 2022) (internal quotation marks omitted) (concluding COVID-19's "mere presence does not amount to loss or damage to the property").

In defining "physical loss" and "physical damage," Sagome primarily relies on the fact that the *virus* is physical in the sense it is tangible, attaches to property, and causes disease. But that interpretation improperly isolates "physical" from "loss" and "damage." *See U.S. Fid. & Guar. Co v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992). For coverage, the loss or damage itself must be physical, not simply stem from something physical.

9

As in *Goodwill Industries*, the period of restoration clause reinforces that Sagome did not suffer a covered loss: There was nothing to restore or repair or any need to move before recommencing business. 21 F.4th at 711. Once the government allowed Sagome to resume selling food, it did. Sagome pled that when it "was allowed to partially reopen its business, it undertook some repairs and alterations on the premises." App. 21. But it did not connect this standalone allegation to COVID-19. Even viewing the facts in Sagome's favor, it would be unreasonable to infer COVID-19 caused Sagome to repair its premises because the virus did not cause any physical loss or damage to repair. *See Cherokee Nation v. Lexington Ins. Co.*, __ P.3d __, 2022 WL 4138429, at *5 (Okla. Sept. 13, 2022) (concluding various COVID-19 modifications "constitute[d] measures to stop the spread of the virus from one person to another, not repairs to or replacement of damaged or lost property").

Sagome's reliance on the civil authority clause is similarly inapplicable. The provision provided that Cincinnati would pay for lost business income if the government prohibited access to L'Hostaria because a covered loss damaged *other* property. But Sagome only alleged COVID-19 damaged other property, which was not a covered loss.

### B. Western Fire

Sagome primarily relies on a Colorado case, *Western Fire*, 437 P.2d at 56. Sagome interprets it to stand for the proposition "that 'direct physical loss' in a property insurance policy does not require visible physical alteration of property." Aplt. Br. at 16 n.3. In *Western Fire*, the fire department ordered a church to close its

10

building because gasoline in the soil and the resulting vapors "infiltrated and contaminated" the building's "foundation and halls and rooms." 437 P.2d at 54 (internal quotation marks omitted). The church claimed it suffered a "direct physical loss" under its insurance policy, and a jury agreed. *Id.* at 53 (internal quotation marks omitted).

Upholding the verdict, the Colorado Supreme Court observed the loss of use could not "be viewed in splendid isolation, but must be viewed in proper context." *Id.* at 55. Doing so showed it was the consequence "of the fact that because of the accumulation of gasoline around and under the church building[,] the premises became so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous." *Id.* And that "equate[d] to a direct physical loss." *Id.*

No Colorado appellate court has since relied on *Western Fire*, although the case has been invoked in other jurisdictions in COVID-19 insurance suits. Courts have generally distinguished it. *See, e.g.*, *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 334 (7th Cir. 2021) ("But the gas infiltration . . . led to more than a diminished ability to use the property. It was so severe that it led to complete dispossession—something easily characterized as a 'direct physical loss.'"); *Santo's Italian Café, LLC v. Acuity Ins. Co.*, 15 F.4th 398, 404–05 (6th Cir. 2021) ("[E]ach case [finding loss of use may be a physical loss] involved property that became practically useless for anything."); *Hill and Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525, 533 (Wash. 2022) (distinguishing

11

*Western Fire* because the property in the instant case was not "rendered unsafe or uninhabitable because of a dangerous physical condition").

We relied on *Western Fire* in an unrelated context. In *Adams-Arapahoe Joint School District No. 28-J v. Continental Insurance Co.*, we upheld the finding of a covered loss where a small portion of the insured's corroded roof collapsed. 891 F.2d 772 (10th Cir. 1989). We agreed with the district court that the policy covered "the entire corroded area, because the corrosion made the school unsafe and unusable." *Id.* at 777–78 (citing *W. Fire*, 437 P.2d at 55).

We find *Western Fire* distinguishable in this context.[6] The Colorado Supreme Court emphasized there was no direct physical loss "until the *accumulation* of gasoline under and around the church *built up* to the point that there was such infiltration and contamination . . . of the church building as to render it uninhabitable and make the continued use thereof dangerous." *W. Fire*, 437 P.2d at 55. Here, Sagome pled that COVID-19—which can cause illness— was in its restaurant.[7] But it did not plead that COVID-19 built up to the point of

---

[6] A Colorado state trial court has recently relied on *Western Fire* to deny an insurer's motion for partial judgment on the pleadings. *Regents of the Univ. of Colo. v. Factory Mut. Ins. Co.*, No. 2021CV30206, 2022 WL 245327, at *4 (Colo. 20th Jud. Dist. Ct. Jan. 26, 2022). In a case involving a university seeking to recover its COVID-19 losses, the court observed, "[I]t is at least plausible to conclude that a property could become so saturated [from COVID-19] with contaminated objects, aerosols, and droplets, that its buildings were uninhabitable." *Id.* Given our understanding of *Western Fire*, we do not find this assessment persuasive.

[7] Sagome did not allege with specificity that COVID-19 was present and transmitted in L'Hostaria. But even accepting its threadbare pleading, Sagome loses.

12

making its property "uninhabitable." Nor could it. COVID-19 did not affect Sagome's property like the gasoline in *Western Fire* and "render [the] restaurant unsafe and unusable for any and all purposes whatsoever." *GPL Enter., LLC v. Certain Underwriters at Lloyd's*, 276 A.3d 75, 87 (Md. Ct. Spec. App. 2022); *see also Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co.*, __ N.E.3d __, 2022 WL 17573883, at *6 (Ohio Dec. 12, 2022) (noting COVID-19 did not render the insured's premises "wholly uninhabitable"). Indeed, Sagome continued to use its property after the initial shutdown, even though COVID-19 presumably remained or was transmitted by infected individuals.

And, notably, the church in *Western Fire* recovered "the cost of remedying the infiltration and contamination." 437 P.2d at 54. Although Sagome may have taken steps to clean surfaces in its restaurant or otherwise remove COVID-19, its remediation efforts were not like those required in *Western Fire*. *See Verveine Corp.*, 184 N.E.3d at 1276 ("While saturation, ingraining, or infiltration of a substance into the materials of a building or persistent pollution of a premises requiring active remediation efforts is sufficient to constitute 'direct physical loss of or damage to property,' evanescent presence is not.").

The gasoline in *Western Fire* led to a total physical loss of use; the church could not use the building until the gasoline was cleaned up. Similarly, the corrosion in *Adams-Arapahoe* made the school "unsafe and *unusable*." 891 F.2d at 777 (emphasis added). *Western Fire* establishes that in Colorado there may be a total physical loss when property is rendered unusable or uninhabitable, a

13

conclusion in line with other jurisdictions. *See, e.g.*, *Murray v. State Farm Fire and Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) ("Losses covered by the policy, including those rendering the insured property unusable or uninhabitable, may exist in the absence of structural damage to the insured property."); *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (New York and New Jersey law) ("When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner."). But Sagome's property was never rendered uninhabitable or unusable. Sagome did not suffer a total or even partial physical loss.

In sum, Sagome was not covered under the policy's plain language, and *Western Fire* does not change that conclusion.

### C. Certification

Sagome requests we ask the Colorado Supreme Court whether COVID-19's presence constitutes physical loss or damage under an insurance policy governed by Colorado law. Because we could rely on relevant precedent from Colorado and other jurisdictions to answer the determinative state-law question, certification is unnecessary.

## III. Conclusion

For the foregoing reasons, we affirm the district court and deny Sagome's certification motion.